### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **AMAG PHARMACEUTICALS, INC.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 21-CV-10618-LTS** |
| **AMERICAN GUARANTEE AND** | ) |
| **LIABILITY INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

### ORDER ON CROSS MOTIONS TO COMPEL

LEVENSON, M.J.

Plaintiff AMAG Pharmaceuticals, Inc. ("AMAG") has served a Motion to Compel

Discovery upon Defendant American Guarantee and Liability Insurance Company ("Zurich")

(Docket No. 54), and Zurich has served a Motion to Compel upon AMAG (Docket No. 56).  The

Court has conducted a hearing on both motions.  The Court heard argument from the parties on

October 11, 2022, and at that time outlined the contours of its rulings on the parties' respective

motions.  This written order details those rulings.  For the reasons stated below, the Court allows

AMAG's Motion to Compel in part and denies it in part, and allows Zurich's Motion to Compel

in part and denies it in part.

#### I.      Background

In its Complaint, AMAG alleges breach of contract against Zurich arising from Zurich's

denial of AMAG's insurance claim in September 2018 under a broad all-risk insurance policy for

commercial property and business interruption (the "Policy").[1]  Complaint, Docket No. 1-4, ¶¶ 69-76.  AMAG made a claim for business losses following an incident at a facility operated by a company ("Supplier") that manufactures AMAG's drug product.  That damage occurred in November 2017.  Although there are disputes about the precise nature of the incident, it involved some kind of leak or discharge from an air hose and, as a result, a possibility of contamination.  Thereafter, Supplier failed to deliver four lots of AMAG's product.  AMAG claims that it suffered tens of millions of dollars of losses and was forced to exit the market.  *Id.*, ¶¶ 6, 7.  AMAG seeks damages and a declaratory judgment.  *Id.*, ¶¶ A-F.

## II.      The Present Motions

### i.      *AMAG's Motion*

AMAG's Motion to Compel seeks additional document production in three areas:

(1) Zurich's entire claims file and various documents relating to claims adjustment and handling, including manuals, forms, instructions, guidelines, policies, drafting history, practices and procedures (*e.g.*, Request Nos. 3, 5, and 11);

(2) documents relating to Zurich's financial reserves in connection with AMAG's claim (*e.g.*, Request No. 9); and

(3) documents relating to Zurich's insurance of AMAG from the inception of coverage (in other words, documents before the specific policy year in which the contested claim was made).  These include initial and renewal policies, underwriting files, loss control and risk

---

[1] The Policy provides coverage for property damage, business interruption (referred to in the Policy as "Time Element") and contingent business interruption, among other covered causes and types of loss.  Specifically, the Policy "[i]nsures against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location[.]"  Zurich Policy, Exhibit A, Docket No. 1-1, Policy § 1.01.

assessment documents, and documents concerning past claims by AMAG (*e.g.*, Request Nos. 1, 2, 4, and 19).

       *ii.*    *Zurich's Motion*

       Zurich's Motion to Compel seeks supplementary responses to discovery requests in three areas:

       (1) Interrogatories Nos. 5, 6, 7, 9, 14-18, relating to the rejection or non-delivery of the four lots, direct physical loss or damage to Supplier's property, the presence of mold at the Facility, AMAG's slowdown of business activities, damages, and mitigation of losses;

       (2) Document Requests Nos. 45-47, relating to AMAG's contentions that certain policy exclusions do not apply to this case; and

       (3) Requests for Admission Nos. 1, 2, 5, 8, and 11, relating to specific information about failures of the particular components of the Supplier's equipment and the presence of mold under the equipment.

## III.    Operative Legal Principles

       In civil cases, "it is now beyond dispute that '[b]road discovery is a cornerstone of the litigation process contemplated by the Federal Rules of Civil Procedure.'" *Zubulake v. UBS Warburg*, 217 F.R.D. 309, 311 (S.D.N.Y. 2003) (alteration in original). Rule 26 of the Federal Rules of Civil Procedure defines the general scope of discovery as follows:

> Parties may obtain *discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1) (emphasis added).

Rule 26(b)(1) generally permits liberal discovery of relevant information.  *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990).  As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Pursuant to Rule 26, the court must limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  *See* Fed. R. Civ. P. 26(b)(2)(C).

"The party resisting discovery bears 'the burden of showing some sufficient reason why discovery should not be allowed.'"  *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-CV-11020-ADB, 2021 WL 1821358, at *2 (D. Mass. May 6, 2021) (quoting *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F. Supp. 1165, 1186 (D. Mass. 1989)).

As noted, below, Zurich declined to produce some documents based upon an assertion that the documents in question constituted protected attorney work product.  The work product doctrine protects (1) documents or other things, (2) prepared in anticipation of litigation, (3) by or for a party or a party's representative.  Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947).  The party who asserts the work product doctrine "bears the burden of proving not only that the work product doctrine applies to the documents listed in the privilege log but also that any privilege has not been waived."  *Woods Hole Oceanographic Institution v. ATS*

*Specialized, Inc.*, No. 17-CV-12301-NMG, 2020 WL 9743702, at *1 (D. Mass. Oct. 9, 2020);

*Amgen, Inc. v. Hoecsht Marion Roussel*, 190 F.R.D. 287, 289 (D. Mass. 2000).

IV.    **Findings and Orders on AMAG's Motion to Compel**

A.    **The Claims File and Documents Concerning Claims Adjustment and Handling, including Manuals, Forms, Instructions, Guidelines, Policies, Drafting History, Practices and Procedures**

*AMAG's Request No. 3* seeks Zurich's entire claims file concerning the AMAG claim.

AMAG notes that Zurich has produced documents in response to Request No. 3 with extensive redactions based on the attorney-client privilege and work product doctrine.  As the Court noted during the hearing on this motion, although it can sometimes be difficult to pinpoint the dividing line, there is a critical distinction between (a) documents reflecting ordinary claims processing, which is the regular work of an insurance company, and (b) documents reflecting communications about legal advice or documents protected under the work product doctrine. *See Rhodes v. AIG Domestic Claims, Inc.*, No. 05-CV-1360-BLS2, 2006 WL 307911, at *4 (Mass. Jan. 27, 2006) ("[A]t least until litigation has been threatened or commenced, the evaluation of the facts by claim investigators and claim agents is also performed in 'the ordinary line of business and duty,' not in anticipation of litigation.").

In this case, a temporal dividing line is the autumn of 2018.  The parties agree that at some time between September 2018, when Zurich denied AMAG's claim, and November 2018, when both parties engaged outside counsel, there was a risk of litigation.  But sometimes timing isn't everything; additional criteria, beyond the date alone, must be considered.

Prior to the autumn of 2018, communications that reflect the seeking or receipt of legal advice would be privileged, but documents reflecting fact gathering, analysis, and decision making would *not* be subject to work product protections.  After the autumn of 2018, however, distinctions become slightly more difficult.  Some of Zurich's activities may still have been in

the nature of ordinary claims processing.  Other activities, if conducted under the supervision of lawyers (or at their direction) would be subject to work product protections, if the purpose was for actual or impending litigation.

The Court expects that the parties will ultimately be able to sort out much of this for themselves.  But the essential starting point will be a privilege log.

Accordingly, the Court orders Zurich to supplement its privilege log so that each entry includes a more detailed description of the document being withheld and specificity as to whether the work was performed by an attorney or at an attorney's behest.

*AMAG's Request No. 5* seeks the following:

> All Documents, including any manuals, forms, instructions, guidelines, policies, practices and procedures You used or considered in the evaluation, adjustment, handling, denial, reservation of rights, and administration of the AMAG Claim, including without limitation all Documents You used or considered in reaching or evaluating Your coverage positions, and the applicability of Policy provisions, exclusions or limitations You relied upon in such coverage positions.

Zurich responded to this request by stating, among other things, that it had no responsive documents.   At the hearing on the parties' motions, the Court noted that Zurich's response to this request is, in effect, a binding admission that Zurich does not have manuals that interpret the Policy.  Under these circumstances, there would be nothing for the Court to order Zurich to compel.

After hearing from the parties, however, it is unclear whether there may be provisions in manuals, forms, or other such documents relating to the reopening of AMAG's claim.  Nor is it evident that Zurich has responded to this request with an eye to the reopening of the claim. Accordingly, the Court orders Zurich to produce documents containing its procedures for re-opening claims to the extent that such procedures are part of Zurich's regular claims process. *See Open Software Found., Inc. v. U.S. Fid. & Guar. Co.*, 191 F.R.D. 325, 328 (D. Mass. 2000)

6

(directing parties to confer on disclosure of "rules, policies and guidelines *actually relied upon* by [the insurer] in disclaiming the coverage at issue in this case") (emphasis in original); *Cf. Thomas & Betts Corp. v. New Albertson's, Inc.*, No. 10-CV-11947-DPW, 2013 WL 11331377, at *4 (D. Mass. July 11, 2013) (ordering testimony regarding insurer's evaluation of claim when documents produced by insurer did not readily disclose the extent to which the insurer may already have compensated the plaintiff for particular claimed losses).

*AMAG's Request No. 11* seeks documents concerning the drafting history of particular provisions of the Policy, including the exclusions upon which Zurich relies. The Court allows AMAG's Motion to Compel, in part only.

There is here a notable risk of overbreadth and undue expense. A request for "all drafts" is potentially exhaustive and expensive to search for. And it is likely to be of only limited relevance. The drafting of insurance contracts frequently involves attorney-client consultations, spawning attendant privilege issues which would be time-consuming and expensive to sort out. The likely cost of producing such an expansive array of materials outweighs the need under Rule 26. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit."); *see Open Software*, 191 F.R.D. at 328-29 (finding the relevance of drafting history marginal where plaintiff only asserted that provisions had "*potential* ambiguity") (emphasis in original).

On the other hand, there *is* a core area of potentially relevant materials where narrowly focused discovery makes sense. There are three exclusion clauses that appear to be central to the parties' dispute: Contamination Exclusion, Faulty Design or Workmanship Exclusion, and

Manufacturing or Processing Operations Exclusion.  *See* Docket No. 1-1, Policy § 3.03.  Much depends on the interpretation of these exclusions and it appears the parties have differing views about them.  Accordingly, it is entirely possible that the history of drafting and revising these clauses may shed light on their meaning.

As to these three particular clauses, the Court ORDERS Zurich to review its files to determine whether there are "standard" clauses (*i.e.* language that Zurich frequently or routinely uses in multiple contracts) addressing these topics.  Zurich is directed to produce documents (which may be a representative sample, provided it fairly reflects any differences among standard clauses) to demonstrate whether there have been changes, over time, to such standard clauses.  To maximize relevance and keep costs under control – the time frame for production shall begin three years[2] prior to Zurich's first insurance of AMAG and continue through the policy year at issue.

### B. **Documents Concerning Insurance Claim Reserves**

*AMAG's Request No. 9* seeks the following:

> All Documents concerning financial claim reserves with respect to the AMAG Claim, including but not limited to Documents concerning the amount of any such reserves and the decision of whether to set such reserves, regardless of whether or not You set any such reserves.

Zurich has opposed producing documents concerning financial claim reserves on the grounds of relevance and on the grounds that the request seeks confidential information as well as information protected by the attorney-client privilege and work product doctrine.  The Court is unpersuaded by Zurich's blanket assertion that financial reserves are, *per se*, beyond the scope of

---

[2] The time limit of three years is intended to strike a balance between (1) the need to provide reasonable context for understanding the contract provisions that are in dispute, and (2) the need to set reasonable limitations on the potential burden to the producing party.

discovery.  Cases addressing the issue have found that an insurer's decision on setting reserves may, in some circumstances, be an ordinary business judgment and, in other circumstances, may be made in anticipation of litigation.  Only in the latter case may attorney-client privilege and work product considerations shield such decisions from discovery.  *See Woods Hole Oceanographic*, 2020 WL 9743702, at \*4; *99 Wall Development, Inc. v. Allied World Specialty Ins. Co.*, No. 18-CV-126, 2019 WL 2482356, at \*3 (S.D.N.Y. June 14, 2019).  In *Woods Hole Oceanographic*, for example, the court found that documents containing reserves information were discoverable because there was no indication that the setting of reserves was part of a litigation strategy; it was made in the ordinary course of business adjusting the insurance claim and the documents did not contain legal analysis or opinion.  2020 WL 9743702, at \*3.

As discussed above, in this case the parties did not anticipate litigation before the autumn of 2018.  Accordingly, any setting of financial claim reserves prior to the autumn of 2018 would have been done in the ordinary course of business, not in anticipation of litigation.  At the hearing on this matter, Zurich represented that there were no financial claim reserves specific to this matter in the period prior to the autumn of 2018; so there may be very little additional disclosure to be made for that time period.

Accordingly, for the period *before* the autumn of 2018, *i.e.* before there was a risk of litigation, the Court ORDERS Zurich to change its redactions on documents that have been produced, in order to disclose pertinent information about reserves.

As for the period *after* the autumn of 2018, the Court ORDERS Zurich to produce any responsive documents that reflect a setting of reserves for the AMAG claim in the ordinary course of business, and also to provide a log with appropriate descriptions of otherwise responsive documents that Zurich withholds on grounds of privilege or work product protection.

9

### C. Prior and Renewal Policies, Underwriting Files, Loss Control and Risk Assessment Documents, and Documents Concerning Other Claims by AMAG

AMAG seeks copies of each of the policies issued by Zurich to AMAG from 2015 through the present (*Request No. 1*), underwriting files concerning each of these policies (*Request No. 2*), loss control, engineering or risk assessment documents concerning AMAG, Supplier, or the policies (*Request No. 4*), and all documents concerning any insurance claim made by AMAG under any of the policies (*Request No. 19*).

In responding to these requests, Zurich has restricted its production of documents to materials that relate directly to the 2017-2018 policy year.  Zurich has taken the position that only the specific policy year in which the claimed loss occurred is relevant.

Zurich's position reflects a cramped view of relevance in the context of discovery.  As discussed at the hearing, the 2017-2018 policy was a renewal, and it is reasonable to expect that underwriting of the risks in question would have taken place, in significant part, at the outset of coverage (*i.e.* in prior years) – rather than at the point of renewal.  It is common for insurers to perform in-depth underwriting at the inception of a policy and to make modest modifications thereafter, year-to-year, based on an insured's reporting of changes to operations.  Thus, relevant underwriting activity may well have occurred in earlier years.

Accordingly, the Court ORDERS Zurich to produce the requested categories of documents, for the full period of AMAG's coverage by Zurich.

## V.    Findings and Orders on Zurich's Motion to Compel

### A. AMAG's Responses to Zurich's Interrogatories

Zurich seeks to compel additional responses to *Interrogatories Nos. 5, 6, 7, 9, and 14-18*. In its responses to each of these interrogatories, AMAG invoked Rule 33(d) of the Federal Rules

of Civil Procedure, declining to make narrative responses and claiming that its production of

business records should suffice in lieu of narrative answers.  Zurich seeks more fulsome

responses.

In appropriate circumstances, Rule 33(d) allows a party to point to relevant documents

instead of providing written narratives.  In this case, however, AMAG's responses did not satisfy

the requirements of the rule.

Rule 33(d) provides as follows:

(d) Option to Produce Business Records. If the answer to an interrogatory may be
determined by examining, auditing, compiling, abstracting, or summarizing a party's
business records (including electronically stored information), and if the burden of
deriving or ascertaining the answer will be substantially the same for either party, the
responding party may answer by:

> (1) specifying the records that must be reviewed, in sufficient detail to enable the
> interrogating party to locate and identify them as readily as the responding
> party could; and

> (2) giving the interrogating party a reasonable opportunity to examine and audit
> the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

To rely on Rule 33(d), a party "must satisfy four criteria: (1) it must affirm that the

information sought by the requesting party is in fact in the specified records; (2) it must specify

the actual documents where information will be found; (3) it must show that answering the

interrogatory in the conventional manner would impose a burden on it; and (4) it must show that

the burden of deriving the answer from the specified records will be substantially the same for

both parties."  *See United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, 332

F.R.D. 1, 6 (D. Mass. 2019) (citing *Licensed 2 Thrill, L.L.C. v. Rakuten, Inc*., No. 13-cv-11257-

DJC, 2015 WL 13376540, at *3 (D. Mass. Oct. 13, 2015)).  "Once the producing party satisfies

these criteria, the burden shifts to the requesting party to establish that the burden of deriving the

11

answers from the business records is not substantially the same for both parties." *Id.* (citing *Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co*., 111 F.R.D. 318, 320 (D. Mass. 1984)).

AMAG's responses do not meet the minimum requirements of Rule 33(d). Among other things, AMAG has failed to identify the specific records where responsive information will be found. Zurich complains, with some justification, that AMAG's interrogatory responses "direct [Zurich] with a total lack of specificity to AMAG's document production – which consists of more than 22,000 pages." Zurich's Motion to Compel, Docket No. 57, at 11.

In considering the sufficiency of AMAG's interrogatory responses, the Court follows the typology that the court employed in *Gattineri v. Wynn MA, LLC*, No. 18-CV-11229-FDS, 2020 WL 4698508 (D. Mass. Aug. 13, 2020). This approach distinguishes between "compilation," and "contention," interrogatories. *See* 2020 WL 4698508, at *2. Although the distinction can be a matter of degree, "courts have recognized that Rule 33(d) is best suited to interrogatories of an objective nature that require compilation of information." *United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc*., 332 F.R.D. 1, 9 (D. Mass. 2019) (collecting cases).

Apart from AMAG's failure to identify responsive documents with specificity, its invocation of Rule 33(d) is, at best, a poor fit when it comes to answering "contention" interrogatories.

AMAG's responses to Zurich's "contention" interrogatories suggest a mistaken view of the role "contention" interrogatories play in narrowing disputed issues in litigation. Citing cases from other judicial districts, AMAG asserts:

> [T]o the extent that Zurich seeks to compel AMAG to further explain documents already produced, Zurich is requesting inappropriate narrative interrogatory answers. Such narratives are unsuitable for this discovery phase of litigation, and are much better suited to be explored in depositions and other stages.

AMAG Opp. to Zurich's Motion to Compel, Docket No. 61, at 10.

Whatever may be the rule elsewhere, the rule in this district is clear.  Local Rule 26.5 provides detailed requirements for a party's response where an interrogatory "calls upon a party to 'state the basis' of or for a particular claim, assertion, allegation, or contention[.]"  L.R. 26.5(8).[4]  A party receiving a "contention" interrogatory must respond in good faith and cannot simply tell its opponent to "go fish," on the supposition that deposition practice (which can be expensive and protracted) would suffice.

Given the insufficiency of AMAG's Rule 33(d) responses, the Court will order AMAG to respond directly (*i.e.* in prose) to most of the contested Interrogatories and Requests for Admission.  Accordingly, as detailed below, AMAG will be required to respond to Zurich's contention interrogatories and "state the basis" interrogatories with complete and intelligible written responses.

*Zurich's Interrogatory No. 5* requests a description of communications "concerning the rejection or non-delivery by Supplier to AMAG of the Four Lots."  This is more nearly a

---

[4]  Local Rule 26.5(8) provides:

> *State the basis.*  When an interrogatory calls upon a party to 'state the basis' of or for a particular claim, assertion, allegation, or contention, the party shall (A) identify each and every document (and, where pertinent, the section, article, or subsection thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory; (B) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory; (C) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and (D) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

compilation interrogatory than a contention interrogatory. Thus, a Rule 33(d) response seems

fitting. Although AMAG's response did not adequately identify the responsive documents, there

is some merit in AMAG's suggestion that it is no better suited than Zurich to create descriptions

of the communications at issue. It would, moreover, be wasteful to spend time and money

preparing descriptions of documents, so long as those documents can be specifically identified

without doing so. AMAG must, however, identify *which* communications concern the topic in

question, information that is plainly relevant.

Accordingly, the Court allows Zurich's Motion to Compel with respect to Interrogatory

No. 5 and ORDERS AMAG to supplement its answer with Bates numbers specifically

identifying responsive documents.

*Zurich's Interrogatory No. 6* asks that AMAG identify portions of the Supplier's property

that experienced direct physical loss or damage, identifying the nature and extent of the physical

loss. *Zurich's Interrogatory No. 7*, in turn, asks that AMAG identify how the property identified

in Interrogatory No. 6 has been repaired. While these interrogatories do not use the exact words

"state the basis" (as contemplated by Local Rule 26.5(8)), they amount to the same thing; Zurich

asks AMAG to identify information that supports AMAG's allegations regarding physical loss

and damage. As such, these interrogatories are essentially contention interrogatories.

AMAG notes that Zurich's "interrogatories request information above and beyond what

AMAG is required to do under the Policy," and – on that basis – argues that "Zurich should not

be permitted here to do what it could not under the Policy." Opp. to Zurich's Motion to Compel,

Docket No. 61, at 9. AMAG offers no authority for the notion that its discovery obligations are

somehow limited by its insurance contract. The scope of discovery is determined by the Federal

Rules of Civil Procedure. While principles of relevance will constrain the scope of discovery in

any given case, that is a far cry from any suggestion that parties' disclosure obligations during litigation are the same as if there were no litigation.

AMAG also justifies its refusal to respond to these interrogatories by its broad claim that "it would be inappropriate to require AMAG to provide a narrative of this information."  Opp. to Zurich's Motion to Compel, Docket No. 61, at 6.  As discussed above, this restrictive view of the discovery process runs contrary to the weight of authority and is foreclosed by local rule.  A major purpose of contention interrogatories is to narrow and define the issues in a case, however much litigants might otherwise prefer to "keep their options open" indefinitely.  Local Rule 26.5(8) expressly requires that specific detail be provided in response to "state the basis" interrogatories.  *See United States ex rel. Long v. Janssen Biotech, Inc*., No. 16-CV-12182-FDS, 2022 WL 4124018, at *6 (D. Mass. Sept. 9, 2022) (ordering further response to interrogatories requesting "all facts you believe support your contention" to an affirmative defense).

*Zurich's Interrogatories Nos. 6 and 7* concern relevant topics, and Zurich is entitled to AMAG's response.  Accordingly, the Court allows Zurich's Motion to Compel with respect to Interrogatory Nos. 6 and 7 and ORDERS AMAG to supplement its answers with an appropriate narrative response.

*Zurich's Interrogatory No. 9* asks that AMAG identify communications concerning mold at Supplier's manufacturing facility. This interrogatory is essentially a compilation interrogatory. As with Interrogatory No. 5, AMAG is better situated than Zurich to identify *which* communications concern the topic in question.  AMAG must identify the specific documents that are responsive to this interrogatory. However, the identification may be by bates number, and need not include separate written descriptions of the responsive documents.

Accordingly, the Court allows Zurich's Motion to Compel with respect to Interrogatory No. 9 and ORDERS AMAG to supplement its answer.

*Zurich's Interrogatories Nos. 14 through 16* request that AMAG state the basis for allegations in specific paragraphs of the Complaint.  As discussed above, AMAG's objection rests on a mistaken view of its obligations to respond to such pure "contention" interrogatories. The controlling authority is Local Rule 26.5(8).

For the reasons outlined above, the Court allows Zurich's Motion to Compel with respect to Interrogatories Nos. 14-16 and ORDERS AMAG to answer these interrogatories with appropriate narrative responses.

*Zurich's Interrogatories 17 and 18* request a list of all losses that AMAG asserts are covered by the policy and a description of AMAG's loss mitigation efforts.  While these interrogatories do not use express "state the basis" language, they are of the same ilk.  Zurich seeks information that supports AMAG's allegations regarding physical loss and damage. AMAG has declined to produce the requested information, contending that it is too soon in the litigation process and that such inquiries are better left to fact and expert depositions.

Again, AMAG's response rests on an unduly restrictive view of its discovery obligations. A defendant is entitled to know what kind of damages it is being sued for.  While there may sometimes be nuances in a loss theory that would entail expert testimony, it makes no sense to propose that parties undertake litigation without a clear understanding of what is at stake. Indeed, the Federal Rules of Civil Procedure build such disclosures into the threshold provisions of the discovery rules.  An itemized listing of damages is part of the initial disclosures that are required without the need for defendant to promulgate an interrogatory.  Rule 26(a)(1)(A)(iii) expressly commands:

> [A] party must, without awaiting a discovery request, provide to the other parties:
>
> ***
> (iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii).

Accordingly, the Court allows Zurich's Motion to Compel with respect to Interrogatory Nos. 17 and 18 and ORDERS AMAG to supplement its answers. While AMAG should include appropriate references to supporting documentation (*i.e.* "materials bearing on the nature and extent of injuries suffered"), it should provide a cogent narrative and/or chart, and may not simply point to documents or invoke Rule 33(d).

### B.  Zurich's Requests for Production of Documents

*Zurich's Requests Nos. 45 through 47* direct AMAG to produce documents that "evidence, support or otherwise relate to Your contention that [a particular Policy exclusion] does not apply to the Claim."[5]  Zurich's Motion to Compel, Docket No. 57, at 12-13.

At the hearing on the parties' motions, the Court noted that these particular requests are potentially limitless in their breadth. In effect they call for a catalog of evidence that might be said to prove a negative. Zurich has withdrawn its motion to compel with respect to Document Requests Nos. 45-47. This part of its motion is therefore DENIED as moot.

---

[5] Request Number 45 identifies the Contamination Exclusion, Request Number 46 identifies the Faulty Design or Workmanship Exclusion, and Request Number 47 identifies the Manufacturing or Processing Operations Exclusion. *See* Zurich's Motion to Compel, Docket No. 57, at 12-13.

### C. Zurich's Requests for Admission

*Zurich's Requests for Admission Nos. 1, 2, 5, 8, and 11* ask AMAG to admit various

contentions about what happened to particular components of the Supplier's equipment during

the relevant period.  AMAG has responded to some of these requests in a manner that roughly

complies with Rule 36; as to other requests, however, it simply objects to Zurich's requests as

improper.

Under Rule 36, an answering party has two options when it chooses not to admit a

request for admission: (1) specifically deny the matter or (2) state in detail why the matter cannot

be admitted or denied.  If an answering party chooses option two, and asserts a lack of

knowledge or information, the party must state that it "made reasonable inquiry and that the

information it knows or can readily obtain is insufficient to enable it to admit or deny."  Fed. R.

Civ. P. 36(a)(4).

As discussed at the hearing on the motion to compel, AMAG's response to Zurich's

Request for Admission No. 1 does state that "an air hose connection . . . had come loose on the

Trayer" and admits the matter at issue.  This is adequate.  AMAG's response includes a relevant

admission about what the Supplier reported to AMAG, coupled with an explicit representation

that AMAG lacks further knowledge or information.  Although AMAG does not explicitly recite

that it has made "reasonable inquiry" – the context (specifically AMAG's assertion that its

knowledge comes from what its Supplier reported) supplies adequate assurance on this point.

*Zurich's Requests for Admission Nos. 5 and 11* relate to particular components of the

Supplier's equipment and the presence of mold.  AMAG has asserted a lack of knowledge or

information, but does not state that it has made a reasonable inquiry.  Inasmuch as discovery is

nearly concluded in this case, it is late in the day for a litigant to be denying – wholesale –

knowledge or information about matters that will likely be in dispute at trial.  Unless AMAG

intends to concede at trial that it remains ignorant about these matters and will not advance any

contentions about them, it must supplement its answers.

  *Zurich's Requests for Admission Nos. 2 and 8*, relate to failure and subsequent repair of

particular components of the Supplier's equipment.  AMAG offered objections but did not

otherwise admit, deny, or specifically state why the matter cannot be admitted or denied.  This

does not comport with Rule 36.

  The mere fact that a party disagrees with the premise of a request for admission is not

grounds for not answering it.  The Court understands that the factual circumstances at issue in

Zurich's Requests for Admission are at the heart of the dispute.  But it is not the Court's job to

decide – at this point – who is right about the characterization of facts.  A party's obligation to

respond to a request for admission does not turn on whether the request is accurate.  If the

answering party believes that a request is based on an incorrect view of the facts or law, it can

and must say so in its response.  *See Papadakis v. CSX Transportation, Inc*., No. 04-CV-30189-

MAP, 2005 WL 8176416, at *2 (D. Mass. Oct. 14, 2005) ("[Requests for admission] exist to

narrow the issues at trial where the parties unambiguously agree.") (quoting *Russo v. Baxter

Healthcare Corp*., 51 F. Supp. 2d 70, 79 (D.R.I. 1999)).

  As discussed at oral argument, AMAG's claim that Requests for Admission Nos. 2 and 8

are too vague is meritless.  Specific information is identified in each, and each comports with

Rule 36 which allows a party to serve a written request to admit the truth of any matters relating

to "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of

any described documents."  Fed. R. Civ. P. 36.

Accordingly, the Court allows Zurich's Motion to Compel with respect to Requests for Admission Nos. 2, 5, 8 and 11 and ORDERS AMAG to amend its responses accordingly.

**VI.     Conclusion**

For the reasons stated above, the Court ALLOWS AMAG's Motion to Compel (Docket No. 54) in part and DENIES it in part, and ALLOWS Zurich's Motion to Compel (Docket No. 56) in part and DENIES it in part.[8]

/s/ Paul G. Levenson
United States Magistrate Judge

Date:    November 15, 2022

---

[8] The parties are advised that under Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determination(s) and order(s) must serve and file any objections within fourteen (14) days of being served a copy of this order, unless a different time is prescribed by the magistrate judge or the district judge.  Such objections must specifically designate the order, or part, to be modified or set aside and the basis for objection.  The district judge will set aside any portion of the magistrate judge's order that is found to be clearly erroneous or contrary to law.  The parties are further advised that failing to follow the objection procedures of Rule 2(b) may preclude further appellate review.  *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999); *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964-65 (1st Cir. 1997).